Casey, Ch. J.,
delivered the opinion of the court:
On the 28 th July, 1851, James Eldridge entered into articles of agreement with Thomas Corwin, the Secretary of the Treasury, for the erection and lease to the United States of four certain warehouses, in the city of San Francisco, California, the rent not to exceed $1,500 per month each ; the lease was for ten years. '
By the terms of the lease, the stipulated rent of $1,500 per month for each of said warehouses was to continue for two *404 years, and after that, at the end of each two years, there were to be referees chosen by the parties to rearrange and determine the rent for the two succeeding years.
The Avarehouses were finished and ready for occupation on the 1st May, 1852. The United States entered into possession and paid the rent until the 1st May, 1854. Then referees were chosen, and a new assessment of the rents for the next two years was made at the same rate. In February, 1856, under instructions from Mr. Guthrie, then Secretary of the Treasury, Milton S. Latham, collector of the port of San Francisco, sub-leased these warehouses to P. J. Hickey, the claimant in this case, for the rent of $500 per month for the warehouses, subject, after the 1st May, 1856, to the reassessment of the rent by the referees, as provided in the lease from Eldridge to the United States. This lease contained the following clause:
“ Provided, nevertheless, that the sum of two hundred and fifty dollars per calendar month is hereby saved and reserved to the said party of the second part, by the said party of the first xiart, during the term of the aforesaid lease, as a bonus to the said party of the second part for leasing said warehouses, said amount of two hundred and fifty dollars to be paid at the expiration of each month after the execution of this instrument, and to continue monthly until the completion of the same.”
It also contained a clause of reentry by the United States for non-payment of rent. Hickey entered into possession under this lease, and paid the rent for the months of February, March, and April, 1856, as stipulated, to Mr. Latham, the collector of the port, he making out the bills for the rent at $500 per month, and deducting the $250 bonus or credit, which the Government allowed to Hickey on his lease. An effort was then made to have a reassessment of the rent, according to the original lease between Eldridge and the United States, but the referees chosen for that purpose failed to agree. No umpire was chosen, and matters remained in this situation, the claimant being in possession but paying no rent subsequent to 1st May, 1856, until the 13th April, 1857. On that day the United States made a compromise with Eldridge, paying him $110,000, he releasing them from further liability for rent, and they assigning' to him the lease with the claimant, and all rents then due upon the same, or to become due thereafter.
*405 In August, 1857, Eldridge instituted proceedings before a justice of tbe peace in San Francisco, tinder tbe landlord and tenant laws of California, to.recover possession of tbe premises. The claimant notified tbe collector of tbe port and tbe district attorney of tbe pendency of these proceedings. On tbe 5th September, 1857, judgment of restitution of tbe premises was rendered against the claimant and execution awarded, and be evicted and Eldridge put into possession. The Lighthouse Board bad certain materials and supplies stored in these warehouses while in possession of tbe claimant. Tbe bill was regularly made out and certified by tbe proper officers, and amounted to tbe sum of $1,370 75.
The claimant seeks to recover tbe monthly bonus reserved of $250, for each month from tbe 1st May, 1856, until tbe 1st May, 1862, being six years, and amounting to $18,000, and thfe account for storage already mentioned.
By tbe express terms of tbe lease between Hickey and tbe United States, what is called in tbe lease a bonus is to be a mere reservation out of and deduction from tbe rent to be paid, and continued only while tbe lease was in force, and no longer. When tbe lease was at an end this payment stopped. As the sub-lessee of tbe United States, Hickey, as against Eldridge, acceded to all tbe rights which they held under tbe first lease from him, and it was bis duty, as well as interest, to have tbe proper assessment of the rent made, and if Eldridge failed, to compel it by proper legal proceedings. This be did not do or attempt. ■ Instead of that be occupied from tbe 1st of May, 1856, until tbe time of bis eviction in September, 1857, without tbe payment of any rent whatever. For bis default be was evicted by due process of law. This determined tbe lease, and all his rights in it ceased as of that time. Tbe lease from tbe United States to claimant and all tbe rent due on it was assigned to Eldridge. Tbe bonus that accrued prior to the eviction Hickey may set off against any demand for rent which Eldridge might prefer against him. He can recover against no one for any bonus after bis eviction for bis own default.
For tbe amount of tbe account, as above stated, the claimant is entitled to recover.
Judgment is to be entered for claimant in tbe sum of $1,370 75.